| | |
|---|---|
| DISTRICT COURT<br>COUNTY OF EL PASO, COLORADO<br>270 S. Tejon Street<br>Colorado Springs, CO 80903<br>Plaintiff:   WOODBRIDGE TOWNHOME OWNERS<br>                   ASSOCIATION, INC.,<br><br>v.<br><br>Defendant:   COUNTRY MUTUAL<br>                       INSURANCE COMPANY. | DATE FILED: August 6, 2021 11:42 AM<br>FILING ID: 23A8CAAFBCC1D<br>CASE NUMBER: 2021CV31231<br><br><br><br>▲FOR COURT USE ONLY▲ |
| ATTORNEYS FOR PLAINTIFF:<br>Jonathan E. Bukowski, #45614<br>Larry E. Bache, Jr., #51958<br>MERLIN LAW GROUP, P.A.<br>1001 17th Street, Suite 1150<br>Denver, CO 80202<br>Phone: 720-665-9680<br>Fax: 720-665-9681<br>E-Mail: jbukowski@merlinlawgroup.com<br>E-Mail: lbache@merlinlawgroup.com | Case Number:<br><br>Div.:            Ctrm: |
| **COMPLAINT AND JURY DEMAND** | |

**COMES NOW** Plaintiff, Woodbridge Townhome Owners Association, Inc., by and through its undersigned counsel, and hereby submit this Complaint and Jury Demand against Defendant, Country Mutual Insurance Company, as follows:

## PARTIES

1.      Plaintiff, Woodbridge Townhome Owners Association, Inc., is a Colorado nonprofit corporation with its principal office in Colorado Springs, Colorado ("Plaintiff" or "Woodbridge").

2.      Defendant, Country Mutual Insurance Company ("Defendant" or "Country Mutual"), is an insurance company domiciled in the State of Illinois and is authorized to engage in the business of Insurance in the State of Colorado.

EXHIBIT B

3. Country Mutual is a foreign corporation doing business in Colorado, and is engaged in the business of insurance.

## JURISDICTION AND VENUE

4. This Court has subject matter and personal jurisdiction over the parties to this cause of action.

5. A cause of action exists under Colorado state law for claims regarding the conduct complained of herein.

6. Jurisdiction is proper as to Country Mutual pursuant to Colorado Revised Statutes § 13-1-124(1)(a), (b), and (d) because Country Mutual conducted the business at issue in this action, committed tortious misconduct and contracted to insure property within El Paso County, Colorado.

7. Venue is proper pursuant to Col.R.Civ.P. 98 because the events which constitute the basis of this Complaint and Jury Demand, including, but not limited to, the formation of the insurance policy and location of the property in question, occurred in El Paso County, Colorado.

## FACTS COMMON TO ALL COUNTS

**A.  THE PROPERTY**.

8. This matter pertains to real property that is located at 10-99 Woodbridge Drive, Colorado Springs, Colorado 80906 (hereinafter the "Property").

9. The roofs of the buildings at the Property are covered with asphalt-composition shingles with fiber-reinforced base mats.

**B.  APPLICABLE PROVISIONS OF THE INSURANCE POLICY**.

10. Woodbridge obtained an all-risk, replacement cost value, policy of insurance from Country Mutual under Policy Number WA0200204998-00 (the "Policy").

11. Woodbridge purchased the insurance Policy from Country Mutual to minimize the economic impact of accidents and losses to its Property.

12. The Policy was issued with effective dates of September 15, 2017, through September 15, 2018 ("Policy Period").

13. Woodbridge paid a premium to Country Mutual, and Country Mutual assumed the risk of loss as covered by the Policy.

14. The premium paid for a conditional promise from Country Mutual to pay Woodbridge if a loss occurred that is covered by the Policy.

15. Country Mutual, by and through its agents and representatives, had knowledge (or constructive knowledge) of the construction of the insured Property, the age and condition of the insured Property, and the use of such Property, and at all material times hereto Country Mutual decided to insure and continue to insure the Woodbridge Property. Country Mutual, having such knowledge, accepted premium payments from Woodbridge in exchange for insuring the Woodbridge Property against loss resulting from wind or hail and other perils.

16. The Policy's insuring agreement providing the following:

*SECTION I – PROPERTY*

    *A.    Coverage*

> *We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.*

17. The Policy does not include a definition of direct physical loss or damage.

18. The Policy does not include a matching limiting endorsement or exclusion.

19. The Policy does not limit or exclude coverage for direct physical loss or damage caused by hail to a roof covering resulting in a reduction of the useful life of the roof covering.

20. The Policy does not limit or exclude coverage for direct physical loss or damage caused by hail to a roof covering resulting in a loss of performance of the roof covering.

21. The Policy does not include a limitation or exclusion of coverage for direct physical loss or damage caused by hail to a roof covering resulting in a loss in the market value of the roof covering.

22. The Policy does not require that the Property sustain functional damage for coverage to be afforded to for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

23. The Policy does not include a cosmetic damage exclusion or a cosmetic damage limiting endorsement.

24. On or about August 8, 2018, during the Policy Period, a hail and wind storm occurred at the Property (the "Storm").

25. The Storm caused direct physical loss or damage to the Property.

26. At the time of the Storm, direct physical loss or damage caused by hail was a covered cause of loss under the Policy.

27. During the underlying Claim, Country Mutual determined and agreed that hail damage to the Property resulting from the Storm, was a covered cause of loss under the Policy.

28. Pursuant to its Policy, Country Mutual agreed to pay the cost to repair or replace direct physical loss or damage to the Property with similar construction and for the same use on the Property.

29. The Policy provides that when the Parties cannot agree on the amount of loss, either Woodbridge or Country Mutual may demand appraisal. Specifically:

    *2.     Appraisal.*

> *If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:*
>
> *a. Pay its chosen appraiser; and b. Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we will still retain our right to deny the claim.*

30.  Country Mutual must pay for the cost to achieve a reasonable uniform appearance between the repair, rebuild or replacement of the damaged property and the materials existing on the Property. *See Hamlet Condominium Ass'n v. American Mutual Family Ins. Co.*, 2016 CV 30594 (Co. Dist. Ct., April 12, 2017).

31.  The Policy was in full force and effect at the time of the loss.

32.  To secure the coverage and protections provided by the Policy, Woodbridge paid $33,151.00 in premiums.

**C.   THE SUBJECT HAIL AND WINDSTORM.**

33.  On or about August 8, 2018, during the Policy period, the Property suffered direct physical loss or damage from the Storm.

34.  The Woodbridge Property sustained impacts from hailstones exceeding 2.00 inches in diameter.



35. The Storm produced softball-sized hail at the nearby Cheyenne Mountain Zoo, killing two zoo animals and requiring the hospitalization of five people and totaling hundreds of automobiles.

36. Among other things, hailstones from the Storm struck and damaged the roof, siding, wood windows, cedar deck guard rail, patio covers, vent caps, and gutters of the Property (the "Loss").

37. Woodbridge timely provided notice to Country Mutual of its Loss.

38. Country Mutual assigned Claim Number 20A24707 to the Loss (the "Claim").

39. Country Mutual investigated the Loss and confirmed that the Property suffered accidental direct physical loss from the Storm.

**D.    COUNTRY MUTUAL'S DEFICIENT ADJUSTMENT OF THE LOSS.**

40. Country Mutual initially assigned adjuster Paul Panagrosso to handle the Claim.

41. Country Mutual retained Vericlaim, Inc., to assist with the investigation and adjustment of the Claim.

42. Vericlaim, Inc., in turn assigned a Senior Insurance Adjuster, Stetson Gilchrest.

43. Country Mutual retained Sergon Building Consultants to assist with preparing a scope and cost to repair hail damage to the Property. Sergon Building Consultants in turn assigned Bobby Calhoun as their estimator.

44. On or about August 17, 2018, Sergon Building Consultants prepared a repair estimate to repair the Property (First Country Mutual Estimate).

45. The First Country Mutual Estimate did not account for all of the covered damage caused by the Storm, including extensive damage to the gutters, awnings, HVAC systems, decking, painting, siding, and windows.

46. The First Country Mutual estimate represented a "low-ball" approach of undervaluing the repairs needed to restore the Property to its pre-loss condition.

47. In May of 2019, Woodbridge retained a Colorado licensed public insurance adjuster to assist with the adjustment and evaluation of its Claim.

48. Woodbridge, through its Colorado licensed public insurance adjuster, presented additional estimates containing information and documentation concerning Storm caused damages which were not included in the First Country Mutual Estimate.

49. On or about March 5, 2019, Country Mutual prepared an updated repair estimate. ("Second Country Mutual Estimate"). The Second Country Mutual Estimate amounted to a minimal increase from the First Country Mutual Estimate, but again failed to adequately account for the significant damage to windows, siding, decking, awnings and exterior paint caused by the Storm.

50. Country Mutual continued to revise its estimates throughout 2019. Country Mutual prepared a final estimate on or around May 7, 2019 (Country Mutual's Final Estimate).

51. Country Mutual's Final Estimate, which included estimates for repairs to the gutters, siding, decking, and painting, again took the low-ball method of valuation and did not accurately assess the cost of repairs.

52. Accordingly, Country Mutual's Final Estimate did not account for all Storm caused damages identified and presented by Woodbridge's public adjuster to Country Mutual.

E.     **APPRAISAL OF THE AMOUNT OF LOSS**.

53.    On May 14, 2020, Woodbridge provided Country Mutual with a written demand that the disputed amount of loss be set by appraisal ("Appraisal").

54.    Prior to making a demand for Appraisal, Woodbridge complied with **Section E. Property Loss Conditions, 3. Duties In The Event Of Loss Or Damage** of the Policy.

55.    Country Mutual agreed to have the amount of loss caused by the Storm set by Appraisal pursuant to the terms and conditions of the Policy.

56.    On August 31, 2020, Country Mutual notified Woodbridge of its agreement to proceed with an Appraisal to determine the disputed amount of loss.

57.    The Parties each selected a competent and disinterested appraiser, creating an appraisal panel to set the amount of loss pursuant to the terms and conditions of the Policy ("Appraisal Panel").

58.    The Appraisal clause within the Policy provides that if the appraisers cannot come to an agreement upon the amount of loss, a third competent and disinterested individual, known as an umpire, will be selected and added to the Appraisal Panel.

59.    For an appraisal award setting the amount of loss to be executed, two of the three Appraisal Panel members must agree and sign a written appraisal award memorializing the agreement as to the amount of loss.

60.    Pursuant to the terms and conditions of the Policy as well as Colorado state law, the Appraisal Panel may make binding factual determinations.

61.    Here, the matters within the scope of Appraisal included the specific remaining items in dispute, including siding, painting, awnings & patio covers, outdoor property, garage doors, temporary repairs, windows, and deck.

62. Roof and gutters were not within the scope of the Appraisal or appraised by the Appraisal Panel.

63. On June 17, 2021, an appraisal award was signed in full by two of the three Appraisal Panel members ("Appraisal Award").

64. Pursuant to the terms and conditions of the Policy, the Appraisal Award is binding on Country Mutual and Woodbridge.

65. In support of the Appraisal Award, the Appraisal Panel provided an agreed to estimate providing a line-by-line itemized scope of repairs outlining the amount of loss to place the Property in its pre-loss condition ("Appraisal Award Estimate").

66. The Appraisal Award and Appraisal Award Estimate did not include the previously agreed to, and paid, damage to the roofs and gutters.

67. The Appraisal Award provided for an increase of over four times above and beyond Country Mutual's Final Estimate.

68. The Appraisal Award further substantiated Country Mutual's failure to properly adjust the claim which resulted in a delay and denial of covered insurance benefits to Woodbridge without a reasonable basis.

69. The actions of Country Mutual have caused Woodbridge great financial harm. The cost of repairs to the Property in dispute have increased due to the unreasonable delay caused by Country Mutual's untenable position and its failure to consider the information provided by Woodbridge prior to the Appraisal. Woodbridge has also incurred significant costs in its retention of a public adjuster, appraiser, and umpire to confirm the unpaid damage to the Property.

**E. COUNTRY MUTUAL REFUSES TO PAY FULL AMOUNT OF LOSS.**

70. On July 12, 2021, Country Mutual notified Woodbridge that it was issuing payment for the Appraisal Award, less prior payments made by Country Mutual.

71. While roofs and gutters were not considered by the Appraisal Panel, or within the scope of the Appraisal, Country Mutual reduced the Appraisal Award by prior payments made to Woodbridge that were attributable to roof and gutter damage from the Storm.

72. Country Mutual knew or should have known that it had no reasonable basis for refusing to pay the full amount of the binding Appraisal Award.

73. Country Mutual's failure to issue payment on the Appraisal Award has resulted in a delay and denial of covered insurance benefits to Woodbridge without a reasonable basis.

74. Woodbridge has performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, have been excused from performance by the acts, representations, and/or conduct of Country Mutual.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Relief)**

75. Woodbridge realleges and reaffirms Paragraphs 1-74 as if fully set forth herein.

76. The Parties have a dispute as to Country Mutual's obligations to comply with the insurance Policy.

77. The Policy provides that Woodbridge or Country Mutual may provide written demand to have the amount of loss set by an Appraisal.

78. The Appraisal Panel may make binding factual determinations pursuant to the terms and conditions of the Policy.

79. Pursuant to the Policy, the Appraisal Panel may set the amount of loss for disputed items within the scope of the Appraisal.

80. The amount of loss for disputed items within the scope of Appraisal that is set by the Appraisal Panel is binding on Woodbridge and Country Mutual.

81. The Appraisal Panel set the amount of loss for specific disputed items within the scope of the Appraisal, including siding, painting, awnings & patio covers, outdoor property, garage doors, temporary repairs, windows, and deck.

82. Roof and gutters were not within the scope of the Appraisal or considered by the Appraisal Panel in arriving at the Appraisal Award.

83. Country Mutual refuses to pay the full amount of the Appraisal Award.

84. Woodbridge seek a judgement that Country Mutual is obligated to provide insurance coverage for benefits for the amount of loss set by the Appraisal Panel in the Appraisal Award.

WHEREFORE, Plaintiff, Woodbridge Townhome Owners Association, Inc., respectfully request that the Court enter a declaratory judgement in its favor and against Country Mutual, finding that (1) Country Mutual must comply with the terms of the Policy and cannot modify or add terms or conditions that were not in the Policy at the time it was issued, (2) an Appraisal may set the amount of loss for disputed items within the scope of the Appraisal, (3) the Appraisal Award is binding on Country Mutual and Woodbridge as to disputed amounts of loss that were within the scope of the Appraisal, (4) Country Mutual may not adjust the Appraisal Award entered by the Appraisal Panel, (5) ordering Country Mutual to issue payment for the amount of loss set by the Appraisal Award, and (6) awarding any other such relief as this Court deems just and appropriate.

## SECOND CLAIM FOR RELIEF
**(Breach of Contract)**

85. Woodbridge realleges and reaffirms Paragraphs 1-74 as if fully set forth herein.

86. Under Colorado law, a party attempting to recover a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

87. Woodbridge purchased an all-risk Policy requiring Country Mutual to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

88. The Policy between Woodbridge and Country Mutual is a binding contract.

89. Woodbridge paid premiums and otherwise performed all conditions precedent to recovery of benefits under its Policy with Country Mutual.

90. The Policy contained a provision that mandated that Country Mutual pay for accidental direct physical loss to the Property caused by hail.

91. The amount of loss caused by the Storm to certain specific items in dispute, including siding, painting, awnings & patio covers, outdoor property, garage doors, temporary repairs, windows, and decking, was set by an Appraisal.

92. Country Mutual refuses to provide the contractually required and covered benefits to Woodbridge under the Policy and pursuant to amount of loss set by the Appraisal.

93. Country Mutual has delayed and/or denied certain covered damages and continues to delay and/or deny certain claimed damages set by the appraisal as outlined above.

94. Country Mutual's failure to honor its obligations under the Policy is a breach of contract.

95. Country Mutual's breach of contract has damaged Woodbridge.

96. Woodbridge is entitled to all benefits due and owing under the Policy, including those outlined in the Appraisal Award and which remain unpaid.

WHEREFORE, Plaintiff, Woodbridge Townhome Owners Association, Inc., respectfully request this Court enter judgment against, Defendant, Country Mutual Insurance Company, for damages resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
**(Unreasonable Delay and Denial of Payment of Covered Benefits Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

97. Woodbridge realleges and reaffirms Paragraphs 1-74 as if fully set forth herein.

98. Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

99. Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

100. Woodbridge is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

101. Country Mutual is an entity engaged in the business of insurance.

102. Country Mutual had the non-delegable duty to investigate the claim objectively and to advise of coverage under the Policy.

103. As alleged herein, measured against reasonable and objective industry standards for claim handling and payment, Country Mutual's actions have unreasonably delayed and/or

denied payment of available policy benefits to indemnify the direct physical loss and damage to the Property, including its low-balled estimates throughout the Claim.

104. Additionally, as alleged herein, measured against reasonable and objective industry standards for claim handling and payment Country Mutual has unreasonably denied benefits to Woodbridge by refusing to release benefits for the amount of loss set by the appraisal.

105. Defendant delayed and denied payment of first-party insurance benefits owed to Woodbridge and did so without a reasonable basis within the meaning of C.R.S. § 10-3-1115(2).

106. By refusing to provide a reasonable basis for withholding payment of benefits for the amount of loss set by the appraisal, Country Mutual has unreasonably denied and delayed payment to Woodbridge in violation of C.R.S. §10-3-1115.

107. Based upon the foregoing Paragraphs, Woodbridge is therefore entitled to two times the covered benefit that have been delayed and denied to it, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

108. Therefore, Woodbridge brings this claim to recover damages awardable under C.R.S. § 10-3-1116, separate from and in addition to those remedies and damages available under any other applicable claims for relief.

**WHEREFORE**, Plaintiff, Woodbridge Townhome Owners Association, Inc., respectfully requests this Court enter judgment against, Defendant, Country Mutual Insurance Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, prejudgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

### FOURTH CLAIM FOR RELIEF
**(Common Law Bad Faith)**

109. Woodbridge realleges and reaffirms Paragraphs 1-74 as if fully set forth herein.

110. Country Mutual owed duties arising from the Policy's implied covenants of good faith and fair dealing, under which Country Mutual covenanted that it would, in good faith and in the exercise of fair dealing, deal with Woodbridge fairly and honestly, faithfully perform its duty of representation, and do nothing to impair, interfere with, hinder, or potentially injure Woodbridge's right to receive the benefits provided by the Policy.

111. An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices, denying and delaying due payment of available benefits under the Policy.

112. Country Mutual has breached its covenant of good faith and fair dealing that it owes to Woodbridge by engaging in a pattern of conduct designed to deprive Woodbridge of its rights and benefits under the Policy. As described in more detail above, Country Mutual strung out the Claim and low-balled the actual cost to repair the hail damage to the Property. Country Mutual's initial evaluation was grossly insufficient as demonstrated by the Appraisal Award. Country Mutual failed to conduct a timely and reasonable investigation. Country Mutual avoided coverage for obvious and owing Claim payments pursuant to the executed Appraisal Award. Furthermore, Country Mutual has failed to timely pay all amounts set by the appraisal.

113. Country Mutual knew or should have known that that its decision to delayed and/or denied payment of available policy benefits to indemnify the loss and damage would cause Woodbridge financial distress and pecuniary loss.

114. Country Mutual knew or recklessly disregarded the fact that there was no reasonable basis for refusing to release benefits for the amount of loss set by the Appraisal.

115. Country Mutual's unreasonable conduct, including its failure to issue a full payment for the amount of loss set by the Appraisal, has forced Woodbridge to institute litigation to recover amounts due under the insurance Policy.

116. Country Mutual's conduct has resulted in an avoidable harm to Woodbridge.

117. It is apparent from Country Mutual's conduct in the handling of Woodbridge's Claim that Country Mutual has adopted a plan or approach to delay, as much as possible, its handling and payment of the Claim.

118. Country Mutual has committed such actions willfully and with such frequency as to indicate a general business practice.

119. Woodbridge has suffered and continues to suffer actual damages due to Country Mutual's breach of its covenant of good faith and fair dealing. As a direct and proximate result of Country Mutual's actions, Woodbridge has:

   a. Incurred increased costs to repair, restore and/or replace the significant property damage;

   b. Suffered and will continue to suffer damages as a foreseeable and proximate result of the misconduct alleged; and

   c. Suffered and will continue to suffer other expenses, including public insurance adjuster fees, appraiser fees, umpire fees, interest on monies advanced for repairs, attorneys' fees, and other losses.

WHEREFORE, Plaintiff, Woodbridge Townhome Owners Association, Inc., respectfully requests this Court enter judgment against, Defendant, Country Mutual Insurance Company, for all damages suffered as a foreseeable and proximate result of the conduct alleged herein, pre and post judgment interest, attorneys' fees in accordance with applicable law, costs including expert witness fees, and such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

120.  Woodbridge demands trial by jury with respect to all claims and issues triable to a jury.

Dated: August 6, 2021                              Respectfully submitted,

                                                  */s Jonathan E. Bukowski*
                                                  Larry E. Bache, Jr., Esq.
                                                  Jonathan E. Bukowski, Esq.
                                                  Merlin Law Group, PA
                                                  1001 17th Street, Ste. 1150
                                                  Denver, CO 80202
                                                  Phone: (720) 665-9680
                                                  Facsimile: (720) 665-9681
                                                  E-Mail: lbache@merlinlawgroup.com
                                                  E-Mail: jbukowski@merlinlawgroup.com
                                                  *Attorneys for Plaintiff Woodbridge Townhome Owners Association, Inc.*